UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRADLEY MOORHEAD, II,

Plaintiff,

v.

OFFICER RAUL HERNANDEZ, et al.,

Defendants.

No. 2:24-cv-00344-TLN-SCR

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding pro se in this civil rights action, which asserts claims under 42 U.S.C. §1983 and state law arising from a law enforcement encounter in Manteca in December 2022. As Plaintiff is proceeding pro se, this matter is referred to the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Now before the Court are the parties' cross-motions for summary judgment (ECF Nos. 35 & 38) and Plaintiff's motion for leave to file a sur-reply (ECF No. 47).

The Court heard oral argument on February 5, 2026. The Court now recommends that Plaintiff's motion for summary judgment be DENIED, and Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART.

**I. Procedural History and Background**

Plaintiff filed his complaint in state court. ECF No. 1 at 1. Defendants removed the action to this Court on January 29, 2024. *Id.* at 1-2. Proceeding under 42 U.S.C. § 1983, the

original complaint asserted violation of Plaintiff's Fourth, Fifth, Eleventh, and Fourteenth Amendment rights related to an unreasonable stop, search, and seizure by Officers Raul Hernandez ("Hernandez") and John Doe. ECF No. 1 at 4. Plaintiff alleged that he pulled into his driveway and a police car pulled in behind him and told him he had a tail light out. *Id.* at 6.[1] He alleges he was then placed in handcuffs and officers began searching his car. *Id.* Plaintiff claims he was also told his tags were expired. Plaintiff alleges he was then released, but Defendants wanted to send a "malicious message" and had Plaintiff's vehicle towed and impounded. *Id.* at 7. Plaintiff states that throughout the encounter he "was not intoxicated, incapacitated, a threat to safety of himself or others, or disorderly." *Id.* at 8. Plaintiff alleges the encounter was videotaped by Officer Hernandez's camera on his patrol car, but when Plaintiff requested the tape it had been "lost or destroyed." *Id.*

On February 5, 2024, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. Defendants raised a variety of arguments, including: 1) there was probable cause for the stop; 2) Plaintiff alleged insufficient facts to state a claim for battery or assault; 3) insufficient factual allegations against Officer Hernandez in Counts II (Assault) and III (Battery); 4) failure to state a claim of false imprisonment; 5) failure to state a *Monell* claim against the City of Manteca; and 6) as to the state law claims, failure to allege compliance with the claim presentment requirement. ECF No. 4 at 8-16.

Plaintiff, without leave of Court, filed a first amended complaint (FAC) (ECF No. 10) while the motion to dismiss was pending. Defendants moved to strike the FAC. ECF No. 11. While the motions were under submission, Magistrate Judge Barnes retired, and the matter was reassigned to the undersigned. ECF No. 15. The Court recommended both motions be granted, and Plaintiff be allowed to file an amended complaint. ECF No. 16. Plaintiff filed a second amended complaint (SAC) (ECF No. 19), and Defendants filed an Answer (ECF No. 20).

The SAC is the operative complaint and names as Defendants: 1) the City of Manteca; 2) Officer Hernandez; and 3) Officer Rehman ("Rehman"). The SAC asserts six claims: 1) a § 1983

---

[1] The page references herein are to the page numbers on the header generated by the CM/ECF system.

claim for violation of the Fourth Amendment against the Officers; 2) assault against the Officers; 3) battery against the Officers; 4) false imprisonment against the Officers; 5) a § 1983 claim against Manteca for failure to supervise and train; and 6) respondeat superior against Manteca for the assault, battery, and false imprisonment claims. ECF No. 19 at 6-8.

After the close of discovery, the parties agreed to a briefing schedule for cross-motions for summary judgment. *See* ECF Nos. 33 & 34. The motions have been fully briefed.

## II. Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive").

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Contra Costa Transit Auth*., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be

drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The Court must also bear in mind Plaintiff's pro se status. Accordingly, the Court may consider the record before it in its entirety, even if a plaintiff does not strictly comply with the Local Rules. *See* Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."). The Court will only consider those assertions that have evidentiary support in the record.

Rule 56(a) provides that the Court may grant partial summary judgment. "Summary adjudication, or partial summary judgment upon all or any part of a claim, is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim." *Hermosillo v. County of Orange*, 562 F.Supp.3d 802, 809 (C.D. Cal. 2021) (internal citation and quotation omitted). "A court may grant summary adjudication as to specific issues if it will narrow the issues for trial." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1199 (E.D. Cal. 2008); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) (citing Moore's Federal Practice for the proposition that "Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim[.]").

## III. Analysis

### A. The Record

The evidentiary record is fairly brief. Plaintiff supports his cross-motion for partial summary judgment with only video evidence. ECF Nos. 29 & 35. This video evidence comes from body-worn cameras of the two officers who conducted the traffic stop, and from officers who arrived about seven to eight minutes after the initial stop. Defendants' opposition and cross-motion for summary judgment (ECF Nos. 37 & 38) rely primarily on that same video evidence, Plaintiff's deposition testimony, and the report of an expert witness, Travis Norton.

While the Court must ordinarily view the facts in a light most favorable to the non-movant, and give the non-movant the benefit of reasonable inferences, this standard is somewhat modified when there is clear video evidence of the events in question. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). In *Scott*, the Supreme Court was critical of the lower court's recitation of the facts in a light favorable to plaintiff where the "videotape tells quite a different story." *Id.* at 379. The Supreme Court stated: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The Supreme Court concluded that the lower court "should have viewed the facts in the light depicted by the videotape." *Id.* at 381.

The traffic stop at issue in this case occurred in the driveway of Plaintiff's parent's home at 1364 Mirassou Drive in Manteca. Defs.' Statement of Undisputed Material Fact 3 ("UMF"), ECF No. 37-2. The officers stopped Plaintiff on suspicion that his license plate light was out, he made a right turn without using his turn signal, and he was speeding. (UMF 6). The Officers ultimately cited Plaintiff for the license plate light, failure to signal, and not having insurance in his vehicle. (UMF 16.)

The body-worn camera video evidence before the Court is discussed in more detail below, but is summarized here.[2] The videos begin in the Officers' law enforcement vehicle as they initiate the traffic stop of Plaintiff's vehicle. The officers then step out of their vehicle and approach Plaintiff, who has just parked in a driveway and is standing next to his vehicle, with his left hand in his jacket pocket. The Officers tell Plaintiff to get back in his vehicle. Plaintiff does not immediately comply. The Officers then tell Plaintiff to take his hand out of his pocket, which he immediately does. One of the Officers then turns Plaintiff around and handcuffs his hands behind his back. About ten seconds elapse from the time the officers tell Plaintiff to get back in his vehicle to when one of the Officers begins to handcuff him.

The Officers and Plaintiff then have a contentious discussion concerning why Plaintiff

---

[2] The video evidence has been lodged with the Clerk's office by both parties. See ECF Nos. 29, 37-5, & 44.

was pulled over, whether Plaintiff needs to remain handcuffed, and Plaintiff's identification and personal details. About three-and-a-half minutes into the stop, Plaintiff gives one of the Officers his driver's license. About four minutes into the stop, an Officer then calls Plaintiff's driver's license number in to dispatch. By around five-and-a-half minutes into the stop, one of the officers says—based on Plaintiff's expired registration—"I think we should tow it." About six minutes into the stop, one of the Officers asks for Plaintiff's date of birth, which Plaintiff provides. The Officer then states he has to "fill out some paperwork." By about seven minutes into the stop, two other police officers arrive as "backup." Throughout this initial period of the stop, Plaintiff repeatedly asks the Officers to remove the handcuffs, including because he is in the driveway of his own home, and explains that he needs to get to the hospital to pick up his mother, because his father is in the emergency room.

By about eight minutes into the stop, the Officers are filling out paperwork. One of the Officers fills out a citation, which he completes by around sixteen minutes into the stop. At that point, the Officers remove the handcuffs from Plaintiff and give him the citation. The Officers remained on the scene and towed Plaintiff's vehicle around 38 minutes into the stop. At that point, the Officers leave the location.

**B. Plaintiff's Motion for Partial Summary Judgment (ECF No. 35)**

Plaintiff moves for summary judgment only on Count I, and only as to one theory of liability. Plaintiff alleges that his handcuffing after the traffic stop was an unreasonable seizure in violation of the Fourth Amendment.[3] ECF No. 35 at 1. Plaintiff supports his motion with a statement of facts. ECF No. 35 at 7-8. Each statement of fact is supported by reference to the video evidence. The Court has reviewed the video evidence, which generally supports Plaintiff's recitation of facts. The Officers handcuffed Plaintiff immediately after he parked in his driveway pursuant to the traffic stop. They kept him handcuffed for approximately sixteen minutes.

---

[3] Plaintiff's SAC also alleges additional Fourth Amendment violations, including the illegal search of his car and improper impoundment of the vehicle. ECF No. 19 at 4. Plaintiff does not meaningfully seek summary judgment on those Fourth Amendment theories. Defendants argue Plaintiff consented to the search and/or it was valid inventory search prior to impoundment. ECF No. 38-2 (Deft's St of Facts ¶¶ 16, 44).

Plaintiff repeatedly asked whether being handcuffed was necessary, and referred to the fact that he was on his own property. Defendants' attempt to dispute the facts largely consists of a different characterization of the video evidence. ECF No. 37-1. For example, Defendants state that Plaintiff was never arrested, but was rather "detained for failure to comply with a lawful command." *Id*. at 3.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment.]" *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id*. at 810.

A traffic stop is generally a "relatively brief encounter" and is analogous to a *Terry* stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "To be lawful, a traffic stop must be limited in its scope: an officer may 'address the traffic violation that warranted the stop,' make 'ordinary inquiries incident to the traffic stop,' and 'attend to related safety concerns.'" *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) (quoting *Rodriguez*, 575 U.S. at 354-55). Attending to related safety concerns includes "certain negligibly burdensome precautions in order to complete [the traffic] mission safely." *United States v. Ramirez*, 98 F.4th 1141, 1144 (9th Cir. 2024) (quoting *Rodriguez*, 575 U.S. at 356, 135 S.Ct. 1609). "So, for example, an officer may order the driver of a vehicle to exit the vehicle during a traffic stop." *Id*.; *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (per curiam) (generally authorizing officers to require motorists to step out of their vehicles). "These safety precautions fall within the mission of the traffic stop because traffic stops are especially fraught with danger to police officers." *United States v. Steinman*, 159 F.4th 550, 561 (9th Cir. 2025) (cleaned up).

"The stop may last 'no longer than is necessary to effectuate' these purposes and complete the traffic 'mission' safely." *Taylor*, 60 F.4th at 1239 (quoting *Rodriguez*, 575 U.S. at 354-55); *see also Rodriguez*, 575 U.S. at 354 ("Authority for the seizure ... ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."). In other words, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the

Constitution's shield against unreasonable seizures." *Id.* at 350. An officer may not make unrelated investigation inquiries "in a way that prolongs the stop." *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019) (quoting *Rodriguez*, 575 U.S. at 355). "That includes investigations that result in only a 'de minimis' prolongation of the stop." *Steinman*, 159 F.4th at 561.

Plaintiff contends that, even assuming the validity of the initial stop, he was subjected to "prolonged handcuffing" and "physically forced" to the front of the patrol car. ECF No. 35 at 2. The Court first finds that the traffic stop itself—which ended when Plaintiff was released from handcuffs after about sixteen minutes—was not unreasonably prolonged. For the duration of that sixteen minutes, the Officers were responding to Plaintiff's contentious questions, obtaining and checking Plaintiff's identifying information, and completing the citation that they ultimately issued to Plaintiff. During a traffic stop, an officer "may address the traffic violation that warranted the stop, make ordinary inquiries incident to the traffic stop, and attend to related safety concerns." *Steinman*, 159 F.4th at 561 (citation and quotation omitted). "Lawful inquiries include checking a driver's license, determining if there are outstanding warrants, and inspecting the automobile's registration and proof of insurance." *Id*. The Officers in this case did not prolong the stop by investigating Plaintiff for matters unrelated to the traffic stop. Nor did they delay the process of issuing him a citation. There is no basis to find the length of the traffic stop itself unreasonable under the Fourth Amendment.

The Officers' decision to handcuff Plaintiff and keep him handcuffed for the duration of the sixteen-minute stop presents a more complex Fourth Amendment issue. Using handcuffs "substantially aggravates the intrusiveness" of a seizure. *See Washington v. Lambert*, 98 F.3d 1181, 1188 (9th Cir. 1996). "Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment." *Id*. at 1187. Whether the application of handcuffs during an otherwise valid stop violates the Fourth Amendment is evaluated under the totality of the circumstances.

To the extent Plaintiff contends that the Officers violated the Fourth Amendment when

they decided to handcuff him at the outset of the traffic stop, he is not entitled to summary judgment on that basis. "[T]raffic stops are especially fraught with danger to police officers." *Steinman*, 159 F.4th at 561 (cleaned up). Defendants argue that Plaintiff was handcuffed for failure to comply with a lawful order and because the officers believed he may have been a threat as he had his hand in his pocket. The Ninth Circuit has "held that the Fourth Amendment allows an officer to order a passenger who has exited an automobile during a traffic stop to reenter the vehicle." *Young v. County of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011), *citing United States v. Williams*, 419 F.3d 1029, 1030 (9th Cir. 2005). In *Young*, the Ninth Circuit found that because the plaintiff failed to obey a lawful order to reenter his vehicle, the officer had authority to arrest the plaintiff, the arrest was not "without lawful privilege," and thus the plaintiff's claim for false imprisonment failed.[4] 655 F.3d at 1170. Plaintiff here admits that at the time of the traffic stop he exited the vehicle and the officer told him to get back in the vehicle. ECF No. 38-4 at 31-32 (Plaintiff's Depo. at 44-45). Plaintiff admits he did not follow that command. *Id*. at 32 (Plaintiff's Depo. at 45). The video evidence confirms this. Where the Fourth Amendment would not have been offended by an arrest of Plaintiff, it was also not offended by the Officers' decision to handcuff Plaintiff.

Beyond the undisputed record of Plaintiff's failure to comply with the Officers' lawful command to get back in the vehicle, Officer Rehman also expressed concern on the video about Plaintiff's hand in his pocket. Defendants' expert, Mr. Norton, opines "that a reasonable officer facing similar circumstances would have handcuffed and conducted a pat down of Mr. Moorhead for weapons in the immediate area where his hand was in his pocket." ECF No. 37-4 at 2. Plaintiff cannot show that, as a matter of law, the initial handcuffing was unreasonable under the Fourth Amendment. *See Steinman*, 159 F.4th at 561 (attending to related safety concerns, such as

[4] The Court does not find that the Officers actually arrested Plaintiff. The video evidence showed he remained handcuffed around the vehicle and driveway area. Plaintiff testified at his deposition that he was never arrested and was not placed in the back of the police vehicle. ECF No. 38-4; Plaintiff's Depo. at 20 & 103. However, even if the Officers had effected an arrest of Plaintiff for a minor traffic violation and/or failure to obey a lawful command, Supreme Court precedent would seemingly preclude a finding that such arrest would necessarily violate the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 534 (2001) (holding that an officer could make an arrest for a minor criminal offense, a misdemeanor seatbelt violation punishable only by a fine, without violating the Fourth Amendment).

for example ordering a driver to exit a vehicle are permissible).

Even if initially reasonable, Plaintiff also contends that the handcuffing was unduly "prolonged." However, Plaintiff also cannot show that, as a matter of law, the Officers' decision to keep him handcuffed for the whole sixteen minutes was unreasonable. "The reasonableness of force used is ordinarily a question of fact for the jury." *Garlick v. County of Kern*, 167 F.Supp.3d 1117, 1145 (E.D. Cal. 2016), citing *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). An excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions" and the Ninth Circuit has stated on many occasions that summary judgment in the context of excessive force claims "should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012). A jury might very well decide that the Officers acted unreasonably by refusing to remove the handcuffs once the initial tension of the situation dissipated—for example, at around the eight minute mark, after the Officers had verified Plaintiff's identity and when two additional police officers arrived on the scene to assist. But the undersigned cannot find as a matter of law that the decision to continue to keep Plaintiff in handcuffs was unreasonable.

Finally, Plaintiff is not entitled to summary judgment on the theory that he was "forced" to the front of the patrol car while handcuffed. After one of the Officers asked him asked if he wanted to sit in the car or stand, he responded he would stand where he was. The Officer then walks Plaintiff to a different area of the driveway, closer to the house. No meaningful force is seen on the video, and Plaintiff at deposition agreed that the "only force" used by the officer was his "hand on your arm" while "guiding" Plaintiff. ECF No. 38-4 at 41. Plaintiff also describes it as "dragging me by my elbow" (ECF No. 38-4 at 41), but as seen on the video there is no unreasonable use of force.

Plaintiff is not entitled to summary judgment on any aspect of his handcuffing-related theories of Fourth Amendment liability.

**C. Defendants' Motion for Summary Judgment (ECF No. 38)**

Defendants move for summary judgment as to all six counts in the SAC. ECF No. 38-1 at

6. Defendants argue there is insufficient evidence to support the claims, and that the Defendant Officers would be entitled to qualified immunity as to Counts I to IV. ECF No. 38-1 at 18. Defendants argue there is no basis for *Monell* liability under Count V, or for respondeat superior under Count VI. *Id.* at 17-18. Defendants also argue that the state law claims should be dismissed for failure to comply with the California Government Claims Act ("CGCA"). *Id.* at 21-22.

**1. Count I – Fourth Amendment**

Plaintiff's SAC raises three possible theories of recovery on his Fourth Amendment claim: 1) being handcuffed for sixteen-minutes was an unconstitutionally prolonged seizure; 2) the search of his car was an unconstitutional search and seizure; and 3) the impoundment of his vehicle was unreasonable under the Fourth Amendment. Defendants argue that he was handcuffed for failure to comply with a lawful order and because the officers believed he may be a threat because he had his hand in his pocket. Defendants also argue Plaintiff consented to the search and/or it was valid inventory search prior to impoundment. ECF No. 38-2 (Deft's St of Facts ¶¶ 16, 44). Although the SAC raises vehicle impoundment, it is not addressed in either motion for summary judgment.

**a. Prolonged Handcuffing**

As discussed above, *supra* Section III.B, the undersigned believes that the reasonableness of the Officers' decision to keep Plaintiff in handcuffs for sixteen minutes—at least under the other relevant facts of this case—should be resolved by a jury. However, the Officers are entitled to qualified immunity on this aspect of Plaintiff's Fourth Amendment claim. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, the Court asks whether (1) Plaintiff has plausibly alleged a violation of a constitutional right, and (2) the constitutional right was "clearly established" at the time of the conduct at issue. *Wilk v. Neven*, 956 F.3d 1143, 1148 (9th Cir. 2020) (quoting *Pearson*, 555 U.S. at 236). Here, Plaintiff

has plausibly alleged a violation of a constitutional right. As noted above, it certainly may violate the Fourth Amendment for police officers to keep an individual in handcuffs during a traffic stop after the tensions of the initial encounter have calmed, the individual has been confirmed to be unarmed, and additional officers have arrived on the scene.

The undersigned nonetheless finds that it was not clearly established that continuing to handcuff an individual under these circumstances would violate the Fourth Amendment. A constitutional right is "clearly established" if "every reasonable official would have understood that what he is doing violates that right" at the time of his conduct. *Taylor v. Barkes*, 575 U.S. 822 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "[A] case directly on point," is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Barkes*, 575 U.S. at 822 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Here, however, Plaintiff has not identified any case that would have given the Officers here "fair warning that their [conduct] was unconstitutional." *Hope v. Pelzer,* 536 U.S. 730, 741 (2002). Nor could the undersigned identify such a case. The closest authority, *Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996), involved a far more intrusive investigation unrelated that was unrelated to the initial traffic stop and appeared to involve clear racial profiling.[5] Again, while the Officers may well have violated Plaintiff's Fourth Amendment rights by keeping him in handcuffs as long as they did under the other relevant circumstances, no precedent has placed this "constitutional question beyond debate." *Barkes*, 575 U.S. at 822.

**b. Automobile Search**

Plaintiff also contends the vehicle search was illegal. Warrantless searches by law enforcement officers "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Cervantes*, 703

---

[5] Precedent that authorizes prolonged handcuffing in the context of the execution of search warrants regarding criminal conduct that often also involves firearms—e.g., drug trafficking—presents a different set of concerns about law enforcement safety. *See, e.g., Muehler v. Mena*, 544 U.S. 93 (2005) (handcuffing of individual for two to three hours during the execution of residential search warrant for officer safety purposes was reasonable under Fourth Amendment). That precedent is not relevant to determining whether qualified immunity is warranted as to possible Fourth Amendment violations that occurred during Plaintiff's traffic stop.

F.3d 1135, 1138–39 (9th Cir. 2012) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). An "automobile exception" allows an officer to search without a warrant if they have probable cause to believe contraband or evidence is in the vehicle. *Id.* There is no argument that exception applies here.

Merely stopping a vehicle for a traffic infraction does not justify a search of the vehicle. *See Knowles v. Iowa*, 525 U.S. 113, 114 (1998) (traffic stop for speeding did not authorize the officer to conduct a full search of the car). Defendants did not have a warrant for a search, and instead contend that Plaintiff consented to the search and/or that it was valid inventory search. As discussed further below, there is at least a question of fact as to whether the impoundment was reasonable under the Fourth Amendment. If the impoundment is unreasonable, then the inventory search is improper. *See People v. Williams*, 145 Cal.App.4th 756, 761 (2006) ("an inventory search conducted pursuant to an unreasonable impound is itself unreasonable"). As to the other justification for the search, Plaintiff's consent, the video evidence is equivocal. When Plaintiff is first asked on the video it appears he gives kind of an "mmm hmmm" response, with a head shake that is more indicative of no. Later when the Officers are preparing to do an inventory search for impoundment, he appears to consent to the search.

At oral argument, Defendants relied on Statement of Undisputed Fact #16, which states: "Plaintiff admitted that the only reason the vehicle was being searched was due to it being towed, as the car was not properly registered at the time of the traffic stop, to which Plaintiff consented." ECF No. 38-2 at 4. This compound statement is unclear. Did Plaintiff admit the search was due to the tow, or that the vehicle was unregistered? Did Plaintiff consent to the tow, or to the search? The Statement cites to deposition testimony. The portions cited on pages 95 through 97 of the deposition discuss an inventory search, and Plaintiff gives equivocal responses as to whether he consented. At page 96:17-20, he states that he did agree to Officer Rehman looking in the vehicle, "[b]ut prior to that, no." ECF No. 38-4 at 55. Then at page 97, lines 3-8, he states he does not remember saying they could search, but he might have. *Id.* at 56.

There is a question of fact as to whether Plaintiff consented to the vehicle search prior to the inventory search commencing. If Defendants searched the vehicle without consent or

pursuant to a vehicle impoundment, they are not entitled to summary judgment, as the unlawfulness of their conduct would have been clear to any reasonable officer.[6] *See Knowles*, 525 U.S. at 114 (traffic stop did not authorize officer, consistent with the Fourth Amendment, to conduct a full search of the car). Defendants are not entitled to summary judgment on Plaintiff's claim that the vehicle search was unreasonable under the Fourth Amendment.

**c. Impoundment**

Plaintiff's other theory is that his Fourth Amendment rights were violated when his vehicle was impounded from a family member's driveway (according to the video it was his parent's driveway). Plaintiff alleges in the SAC that the Officers "were intent on sending plaintiff a malicious message that they will do [sic] they want and tow and impound plaintiff's automobile." ECF No. 19 at 4. Neither party focuses on the impoundment issue in the summary judgment briefing. In *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005), the Ninth Circuit held that the decision to impound a vehicle after the driver has violated a vehicle regulation "must consider the location of the vehicle, and whether the vehicle was actually impeding or threatening public safety and convenience on the streets, such that impoundment was warranted." In *Miranda*, the Ninth Circuit further stated:

> While Officer Calvert may not have believed that the Mirandas would comply with all regulations in the future, when he issued citations and called for the vehicle to be impounded, **the vehicle was already parked in the Mirandas' home driveway**. Mr. Miranda was licensed to drive the car. Under these circumstances, the Mirandas' car was not creating any impediment to traffic or threatening public safety. An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers.

429 F.3d at 865-66 (emphasis added).

The *Miranda* court found that just because an impoundment may be authorized by city ordinance or state statute, does not make it reasonable under the Fourth Amendment. *Id*. at 864.

---

[6] Moreover, qualified immunity is inappropriate given the parties' dispute about how to interpret the facts concerning consent. "[W]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate." *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).

A court must also ask whether impoundment is reasonable under the community caretaking function. "An impoundment is proper to prevent the immediate and continued unlawful operation of the vehicle or to remove a vehicle left in a public location where it creates a hazard." *Id*. at 865 n.6. In deciding whether to impound, and officer "must consider the location of the vehicle, and whether the vehicle was actually "impeding traffic or threatening public safety and convenience" on the streets, such that impoundment was warranted." *Id.*

Here, as in *Miranda*, the vehicle was parked in the family's private residential driveway. The vehicle was not impeding traffic or threatening public safety. Plaintiff had a valid driver's license. On the video, Plaintiff states that the vehicle was registered (he had paid), but the vehicle still needed a smog test. Plaintiff had an alternate means to lawfully leave the area, as he accessed the garage during the stop and there was discussion on the video that he had keys for another vehicle for going to see his parents in the hospital.

The impoundment issue was not developed in the briefs. At oral argument, Defendants contended that impoundment was permissible under the California Vehicle Code. Defendants may believe that impoundment was lawful based on Vehicle Code §22651(o)(1)(A)(i) because the registration was expired by six months. At about the 38-minute mark of Officer Rehman's body-camera video, he says they tow if more than six-months expired. Even if Defendants were relying on the statute, under both Ninth Circuit law and California law, that would not necessarily make the impoundment constitutionally reasonable. *See Williams*, 145 Cal.App.4th at 762 ("statutory authorization [of § 22651] does not, in and of itself, determine the constitutional reasonableness of the seizure"). All of this was clearly established at the time of the incident and so qualified immunity is not appropriate.[7] Defendants are not entitled to summary judgment on Plaintiff's claim that the impoundment of his vehicle violated his Fourth Amendment rights.

---

[7] *Miranda* clearly established, in 2005, that, "An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." 429 F.3d at 866. Further, the Ninth Circuit held in *Miranda* that just because impoundment is authorized by ordinance or state law does not mean it is reasonable under the Fourth Amendment. *Id.* at 864.

**2. Counts II and III – Assault and Battery**

Plaintiff asserts claims for assault and battery in the SAC. The Court has reviewed the video evidence submitted by the parties, and there is no evidence on the video to support claims of assault and battery against the Officers. In asserting a battery claim against a police officer under California law, a plaintiff must prove that the use of force by the officer was unreasonable. *Edson v. City of Anaheim*, 63 Cal.App.4th (Cal. Ct. App. 1998); *see also Fortson v. City of Los Angeles*, 628 F.Supp.3d 976, 994 (C.D. Cal. Sept. 19, 2022) ("Proving claims for assault and for battery against a police officer … requires a showing that the officer used unreasonable force."). As both claims of excessive force under § 1983, and assault and battery under state law, look to the reasonableness of the use of force, the analysis for both types of claims is effectively identical. *Fortson*, 628 F.Supp.3d at 994 ("The test employed under California law to determine if the force used was unreasonable is identical to the test employed under federal law applying Section 1983.").

The video demonstrates a minimal amount of force being used to handcuff Plaintiff. Plaintiff answered "yes" to the question at his deposition: "the only force that an officer used on you was to put handcuffs on you, true?" ECF No. 38-4 at 58. Plaintiff in his briefing complains that he was "forced" to the front of the patrol car while handcuffed, and that he should not have been forced to move after being asked if he wanted to sit in the car or stand. After being asked that question, and saying he would stand where he was, Plaintiff is then walked to a different area to stand. He is not placed in the car. No excessive force is seen on the video, and Plaintiff at deposition agreed that the "only force" used by the officer was his "hand on your arm" while "guiding" Plaintiff. ECF No. 38-4 at 41. Plaintiff also describes it as "dragging me by my elbow" (ECF No. 38-4 at 41), but as seen on the video there is no unreasonable use of force. Plaintiff does not argue that the handcuffs were too tight or that he suffered any physical injury.

Defendants' motion for summary judgment as to Counts II and III should be granted.

**3. Count IV--False Imprisonment**

Under California law, the elements of false imprisonment are: 1) the nonconsensual, intentional confinement of a person; 2) without lawful privilege; and 3) for an appreciable period

of time, however brief. *See Dominguez v. Morgan*, 2017 WL 5629566, *4 (E.D. Cal. Nov. 22, 2017), citing *Easton v. Sutter Coast Hosp*., 80 Cal.App.4th 484, 496 (2000). "False arrest and false imprisonment are not separate torts. False arrest is but one way of committing a false imprisonment." *Black v. City of Blythe*, 562 F.Supp.3d 820, 830 (C.D. Cal. Feb. 25, 2022) citing *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 752 n.3 (1997). Under California law, a police officer may be held liable for false arrest/false imprisonment. *Id.* at 829 (citation omitted).

Plaintiff's claim for false imprisonment is based on prolonged handcuffing, which the Court discussed in the context of Plaintiff's Fourth Amendment claim, *supra* Section III.B & C.1. As noted above, Plaintiff's initial handcuffing after refusing an order to reenter his vehicle did not constitute false imprisonment. In *Young*, the Ninth Circuit found that because plaintiff failed to obey a lawful order to reenter his vehicle, the officer had authority to arrest plaintiff, and thus the arrest was not "without lawful privilege" and thus the claim for false imprisonment failed. 655 F.3d at 1170. Similarly here, Plaintiff admits that at the time of the traffic stop he exited the vehicle and the officer told him to get back in the vehicle. ECF No. 38-4 at 31-32 (Plaintiff's Depo. at 44-45). Plaintiff admits he did not follow that command. *Id*. at 32 (Plaintiff's Depo. at 45). Plaintiff admitted during his deposition that he was agitated at the beginning of the stop, cursed, did not follow the command, and was handcuffed for not being cooperative. ECF No. 38-4 (Plaintiff's Depo. at 45, 48, 52, & 102).

However, as indicated above, the Officers' decision to maintain Plaintiff in handcuffs for sixteen minutes may not have been reasonable. At some point during that period, Plaintiff's handcuffing may have begun to constitute a false imprisonment. Unlike a constitutional claim brought under § 1983, qualified immunity is not available for a state law claim like false imprisonment. *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013) ("[T]he doctrine of qualified immunity does not shield defendants from state law claims."). Defendants' motion for summary judgment as to Count IV should therefore be denied.

**4. Count V – *Monell* Liability against the City of Manteca**

"[M]unicipalities and other local government units … [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). "A municipality may

be held liable as a 'person' under 42 U.S.C. § 1983 when it maintains a policy or custom that causes the deprivation of a plaintiff's federally protected rights." *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020). Here, the SAC alleges that the City of Manteca did not maintain reasonable care in hiring, and failed to adequately train and supervise its police officers. ECF No. 19 at 7-8.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.*, quoting *City of Canton*, 489 U.S. at 388. "Under this standard, a municipal defendant can be held liable because of a failure to properly train its employees only if the failure reflects a 'conscious' choice by the government." *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc). A failure to train *Monell* claim cannot be premised on mere negligence. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). In order to meet the deliberate indifference standard, generally a showing is required that the municipality had notice that an omission in training would cause the violation of constitutional rights. *Kirkpatrick*, 843 F.3d at 794. In order "to demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is ordinarily necessary for a plaintiff to demonstrate a pattern of similar constitutional violations by untrained employees." *Id.* (citation and internal quotation marks omitted).

Plaintiff was asked at his deposition what documentary evidence he had to support his claim that the City of Manteca had a policy of deliberate indifference, and he said, "I don't have anything." ECF Nol 38-4 at 19. He further testified he did not have any documents to support his claim that the City of Manteca failed to exercise reasonable care in hiring its officers, but stated he had a prior encounter with Officer Hernandez. *Id*. Plaintiff also testified he had no documentary evidence to support his claims of inadequate training or that either of the Defendant Officers had a pattern of violating citizen's rights. *Id*. at 20-21.

Discovery has closed in this matter, and Plaintiff has offered insufficient evidence to

support his claims of inadequate training and supervision. Plaintiff's evidence at summary judgment rests entirely on the video evidence from the traffic stop. Defendants' motion for summary judgment as to Count V should be granted.

**5. Count VI – Respondeat superior liability for the state law claims**

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment." *Mary M. v. City of Los Angeles*, 54 Ca.3d 202, 208 (1991). Although there is not respondeat superior liability under § 1983, there can be such liability for state tort claims. *See Rodriguez v. County of Los Angeles*, 654 F.Supp.3d 1029, 1049 (C.D. Cal. June 13, 2023) ("[W]hile there may be no respondeat superior liability for Los Angeles County under § 1983, the County is vicariously liable under state law for the torts of its deputies—even the unnamed ones—that were committed during their official duties.") (internal citations omitted). As explained above, Plaintiff's state law claims for assault and battery should be dismissed, but his false imprisonment claim should survive. Accordingly, the City of Manteca may be liable on a respondeat superior theory only for false imprisonment.

Defendants' motion for summary judgment as to Count VI should be granted only as to Plaintiff's respondeat superior claims against Manteca for assault and battery.

**5. Other Arguments**

In addition to Defendants' merits arguments that the evidence does not support Plaintiff's claims, Defendants also contend they are entitled to summary judgment on Counts I thru IV on the basis of qualified immunity and that the state law claims fail for failure to comply with the California Government Claims Act ("CGCA") under California Government Code §§ 911.2, 945.5. ECF No. 38-1 at 21-22. Additionally, Defendants argue that the request for punitive damages as to both the City of Manteca and Officers must be dismissed. *Id.* at 21.

As to the CGCA presentment argument, Defendants' brief devotes only three sentences to this argument, and cites no case law. ECF No. 38-1 at 21-22. Additionally, attached to the SAC is a "NOTICE OF ACTION ON CLAIM" ("Notice") from the City which states that Plaintiff's claim which was presented June 26, 2023, was rejected by operation of law on August 15, 2023.

ECF No. 19 at 11. The Notice further provides that Plaintiff has six months to file a court action. Plaintiff filed the action on December 19, 2023 in state court. ECF No. 1 at 4. Thus, this argument appears to lack merit.

Defendants' arguments as to qualified immunity have been addressed above in the context of each substantive claim.

Finally, the City of Manteca is not liable for punitive damages as a matter of law. *See* Cal. Gov't Code § 818; *Austin v. Regents of Univ. of Cal.*, 89 Cal.App.3d 354, 358 (1979).[8] As to the Officers, Defendants argue "[t]here are not allegations in the complaint that construe the Officers' conduct as anything other than the application of routine police protocols for investigating Plaintiff's traffic violations." ECF No. 38-1 at 21. This is incorrect. Plaintiff alleges he was "discriminatingly profiled" and assaulted and battered. ECF No. 19 at ¶ 2. Plaintiff alleges his car was illegally searched. Plaintiff alleges the offers "were intent on sending plaintiff a malicious message that they will do [sic] they want" and towed and impounded his car. ECF No. 19 at 4.[9]

Punitive damages are available in § 1983 actions, even if the plaintiff cannot prove compensable damages. *See Smith v. Wade*, 461 U.S. 30, 55 n.21 (1983). Punitive damages are awarded at the jury's discretion, and the jury must find either that the defendant acted with an evil motive or demonstrated reckless indifference to the constitutional rights of the plaintiff. *Id.* at 54, 56. The Ninth Circuit has also held "that oppressive conduct is a proper predicate for punitive damages under § 1983." *Dang v. Cross*, 422 F.3d 800, 809 (9th Cir. 2005). The Court has found that questions of fact preclude summary judgment on Plaintiff's claim that his car was illegally searched, and on the claim that the impoundment of his car was unreasonable under the Fourth Amendment. Defendants have not established as a matter of law at this juncture that the trier of

---

[8] However, the City of Manteca may be responsible for indemnifying an employee for a punitive damages award against that employee. *See* Cal. Gov't Code § 825; *see also Bell v. Clackamas County*, 341 F.3d 858, 868 n.4 (9th Cir. 2003) (recognizing municipalities are immune from liability for punitive damages under §1983 but "may pay punitive damages in some circumstances" and citing § 825(b)).

[9] The paragraphs are misnumbered in the SAC. It proceeds from 1-9, then skips to 14-18, then 17 again, before proceeding with 27-49.

fact could find no basis for an award of punitive damages. Defendants' entire argument on punitive damages is brief (ECF No. 38-1 at 21) and does not rely on evidence in the summary judgment record. As set forth above, Plaintiff has alleged more than just "routine police protocols." Defendants' request for summary judgment on the issue of punitive damages should be denied as to the Officers but granted as to the City of Manteca.

**D. Plaintiff's Motion for Leave to File Sur-Reply (ECF No. 47)**

Plaintiff seeks to file a sur-reply to respond to Defendants' Reply (ECF No. 45). Defendants have not opposed this request. Generally, subject to certain exceptions, a sur-reply may not be filed. See Local Rule 230(m) ("After a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval"). The exceptions allow for a party to object to new evidence submitted with a reply brief, or to provide a notice of supplemental legal authority. LR 230(m)(1) & (2). Plaintiff's motion and sur-reply largely complain that not all evidence was turned over by Defendants in discovery, particularly Plaintiff suggests there should be dash cam footage. Discovery closed in this matter long before Plaintiff's motion for a sur-reply. Plaintiff had filed a motion to compel (ECF No. 27), which was denied for failure to comply with the Local Rules (ECF No. 28). The motion was denied without prejudice, and Plaintiff did not renew the motion. Plaintiff's later complaints about the discovery process are untimely.

Nonetheless, as the motion to file sur-reply is not opposed, and the sur-reply is brief, the Court will GRANT the motion and has considered the sur-reply.

**IV. Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion for leave to file sur-reply (ECF No. 47) is GRANTED.

Further, **IT IS RECOMMENDED** that:

1. Plaintiff's motion for partial summary judgment on Count I (ECF No. 35) be DENIED.
2. Defendants' motion for summary judgment (ECF No. 38) be:
    a. GRANTED only as to Plaintiff's handcuffing theory of liability as to Count I,

but otherwise DENIED as to that claim;

b. GRANTED as to Counts II, III, and V;

c. DENIED as to Count IV;

d. GRANTED only as to Plaintiff's assault and battery theories of liability as to Count VI; and

e. GRANTED so as to preclude punitive damages against Defendant City of Manteca.

3. This matter be referred back to the undersigned for a status conference at which the Court will set the remaining final pretrial deadlines and a trial date.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen days** after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 22, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE